**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON**)

| | | |
|---|---|---|
| JOSHUA BEALL, | : | Case No. 3:22-cv-212 |
| | : | |
| Petitioner, | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | |
| | : | |
| WARDEN, | : | |
| | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner proceeding *pro se*, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court to consider the Petition (Doc. 1), the Return of Writ (Doc. 7), and the state court record. (Docs. 5, 6-1). For the reasons that follow, it is **RECOMMENDED** that the Petition be **DENIED** and this action be **DISMISSED**.

## I.    FACTUAL BACKGROUND

On June 8, 2018, a Montgomery County, Ohio grand jury indicted Petitioner on thirteen counts for a crime spree involving a string of bank robberies that culminated in the murder of Donald "Trey" Armstrong. (Doc. 5 at PageID #25-33). Petitioner, through appointed counsel, filed a motion to sever the bank robbery counts from the murder counts, arguing that the charges were too dissimilar to justify a joint trial and Petitioner would be prejudiced by irrelevant evidence. (*Id.* at PageID #36-42). The trial court disagreed and denied the motion. (*Id.* at PageID #65-72). Petitioner waived his right to a jury trial on the bank robbery and possession of a weapon under disability charges (Counts One, Two, Twelve and Thirteen of the Indictment) (*Id.* at PageID #73).

The state court conducted a bench trial on those charges on February 25-26, 2019, and a jury trial on the remaining charges on March 4-7 and 11-12, 2019. (Doc. 6-1 at PageID #660-2599). The Ohio Court of Appeals, Second District ( "Court of Appeals") found that the following facts were adduced at trial:

{¶ 2} On May 26, 2018, a man entered the U.S. Bank facility located inside the Meijer store on Colonel Glenn Highway in Fairborn. The man's face was covered in a thick layer of makeup foundation, and he was wearing a turtleneck with sleeves to the wrist, a hoodie with a flower print, large sunglasses, and gloves. He approached Stephanie Burkhardt, a bank manager, who was working at a teller station. The man showed Burkhardt a piece of paper on which was written, "This is a robbery, do not call the police." Burkhart placed approximately $2,500 dollars in the man's bag. The man then left the building.

{¶ 3} The following day, Christopher Benner was at work in the automotive department of a Walmart located on Brandt Pike in Huber Heights. He noted a vehicle pull up to the side of the garage bay doors. A man wearing a black t-shirt with the word "Thrasher" in white lettering exited the vehicle and opened the vehicle's hood. Benner noted the man had tattoos on his face, neck, arms, and legs. The man asked Benner if the car could be repaired at the Walmart facility. Benner informed him that the facility was not equipped to make the requested repair and did not sell the needed part. The man then entered the Walmart at approximately 1:00 p.m.; video surveillance cameras recorded him buying makeup foundation, eyeliner, concealer, applicator pads, and face wipes.

{¶ 4} On that same day, Lindsey Hanson was working as a delivery driver for a Domino's Pizza restaurant. She was driving her own vehicle, a black Mazda sports utility vehicle (SUV). At approximately 5:00 p.m., Hanson was in her car making two deliveries; the second delivery was to a person who had placed an on-line order and identified himself as Jacob Wilkinson. The order form stated that the customer would be on a break from work and would be behind his workplace at the intersection of Taylorsville Road and Brandt Pike. When Hanson pulled behind the identified business, she observed a man sitting on a bench. The man had a "buzz" haircut, numerous tattoos, and was wearing a black t-shirt with the word "Thrasher" on the front. Hanson exited her car with a large bottle of Sprite and a "heat bag" containing pizza. She approached the man, and he handed her cash. She handed him the soft drink, then placed one hand under the heat bag and began extracting the pizza with her other hand. The man pulled out a gun, held it to her face, and told her he was taking her car. After the man left in her car, Hanson ran to the front of the building and asked someone to call the police.

{¶ 5} On May 29, 2018, Brandon Morgan was working at the Colonel Glenn Highway U.S. Bank branch that had been robbed on May 26. He was at a teller

station when he observed a man enter the bank wearing thick makeup, a straw hat, big sunglasses, and a green coat with a high collar and long sleeves. Morgan, who was aware of the prior robbery and who had seen pictures of the robber, told a co-worker at the next teller station that they were "about to get robbed." The man walked up to Morgan and handed him a pink Post-it note with lines on it, on which was written: "this is a robbery, give me all of your 50's, 20's and 100's, no dye packs." As Morgan reached into his cash drawer, the man said "hurry the f*** up, this isn't a joke." Morgan gave the man approximately $2,500 and returned the note to him. The suspect left the building and entered an SUV waiting outside.

{¶ 6} On May 30, 2018, Alexander Vasquez was working as a night auditor at a local hotel. He ended his shift at approximately 7:00 a.m., and he returned to his apartment. When he got home, Beall, Casey Cole, and Donald Armstrong were in his apartment. (Beall and Vasquez had a sexual relationship; Armstrong and Cole had been staying at Vasquez's apartment.) The three asked to borrow Vasquez's rental car, which was a black Mitsubishi Outlander SUV. The three left in his car, and Vasquez went to bed.

{¶ 7} At approximately 2:20 p.m. that same day, a woman, later identified as Cole, entered the LCNB Bank branch on Far Hills in Oakwood. Cole was wearing a reddish-colored shirt, jean shorts, tennis shoes, and large glasses. Cole handed a note to Jacqueline Ginn, who was working as a teller that day. The note stated that the bank was being robbed and requested various bill denominations; the note also stated that the bills should not be marked and a dye pack should not be used. Ginn gave Cole currency as demanded by the note. Cole then took the note back from Ginn, left the store, and walked to the adjacent CVS Pharmacy parking lot, where she entered a car and drove away.

{¶ 8} Later that day, Beall, Cole, and Armstrong returned to Vasquez's apartment and went directly into a bedroom. Vasquez was sitting in the living room when he heard several gunshots from the bedroom. Beall walked out of the bedroom and looked out the window of the apartment. Beall then returned to the bedroom, and Vasquez heard two more gunshots. Beall again walked out of the bedroom, then pointed a gun at Vasquez. Beall attempted to pull the trigger, but the gun did not fire. Beall ran out of the apartment, and Cole followed Beall out of the apartment. Vasquez found Armstrong, who had been shot, on the floor in the bedroom. Armstrong died from multiple gunshot wounds.

{¶ 9} Oakwood police investigators received a tip that the woman involved in the LCNB robbery was Casey Cole. After obtaining a photograph of Cole from a state database, police recognized her as the suspect caught on the bank's surveillance system. Surveillance camera footage from the CVS beside the bank showed Cole getting into a black Mitsubishi SUV. Oakwood police ascertained that the Mitsubishi had been rented by Alexander Vasquez. A picture from the LCNB footage was shown to Vasquez by Oakwood Detective Jeff Yount, and Vasquez identified the woman in the picture as Cole. The police searched the Mitsubishi and

found makeup foundation smeared on the exterior. They also found makeup in a Walmart bag inside the vehicle. A search of Vasquez's apartment revealed a pad of lined pink Post-it notes and seven shirts with makeup on their collars. Police also found a green long-sleeved coat with an emblem, which matched the description of the coat worn by the perpetrator of the second U.S. Bank robbery; the coat had makeup on its collar. A crumpled piece of pink paper was also recovered. The paper appeared to have been wet at one point, but it appeared to still have the word "robbery" written on it.

{¶ 10} Cole's cellphone was used to track her to Sharonville, Ohio. Sharonville police found a black Mazda SUV in the parking lot of an Enterprise Rental Car facility. An officer observed that the car was occupied and approached the vehicle with his gun drawn. The Mazda drove off through the grass, and officers pursued. During the chase, the car drove at high speeds and traveled the wrong way on different roads with its lights off. The car eventually wrecked when a road it had been traveling on suddenly ended. When officers approached the car, it was flipped onto its top and the airbags were deployed. Beall was removed from the car and transported to a local hospital. While en route to the hospital, an emergency medical technician (EMT) sat in the back of the ambulance with Beall. The EMT was filling out paperwork when Beall said that he had "always wanted to kill somebody but it just didn't feel as good as he thought it would."

{¶ 11} Dayton police retrieved evidence the Sharonville police had found in the wrecked vehicle, including wigs, guns, ammunition, Armstrong's wallet, cash, and Lindsey Hanson's identification. When Dayton police interviewed Beall, he admitted he had committed the U.S. Bank robberies. He also stated he made Cole rob the LCNB Bank, and that he and Armstrong were with Cole when she committed the robbery. He further admitted the trio was counting money from the LCNB robbery when he shot Armstrong; afterward, Beall went into the living room with the intent to shoot Vasquez, but Beall left the apartment when his gun jammed. Finally, Beall admitted that he had robbed Hanson and stolen her car, and that he was in Hanson's car when he was apprehended after the car chase.

{¶ 12} On June 8, 2018, Beall was indicted on two counts of robbery (use/threat of force) in violation of R.C. 2911.02(A)(3), one count of having weapons under disability (prior offense of violence) in violation of R.C. 2923.13(A)(2), one count of having weapons under disability (prior drug offense) in violation of R.C. 2923.13(A)(3), one count of robbery (physical harm) in violation of R.C. 2911.02(A)(2), one count of complicity to commit robbery (use/threat of force) in violation of R.C. 2923.03(A)(2) and 2911.02(A)(3), two counts of murder (proximate result) in violation of R.C. 2903.02(B), one count of attempted murder in violation of 2923.02(A), one count of felonious assault (serious physical harm) in violation of R.C. 2903.11(A)(1), one count of felonious assault (deadly weapon) in violation of R.C. 2903.11(A)(2), one count of failure to comply (serious physical harm/substantial risk) in violation of R.C. 2921.331(B) and (C)(5)(a)(ii), and one count of improper handling of a firearm in a motor vehicle (loaded/no license) in

violation of R.C. 2923.16(B). The counts for murder, attempted murder, and felonious assault carried attendant firearm specifications.

{¶ 13} A bench trial was conducted on the two counts of robbery (use/threat of force) involving U.S. Bank and the two counts of having a weapon under disability. The trial court found Beall guilty of all four charges. Thereafter, a jury trial was conducted on the remaining charges.

{¶ 14} In addition to the above-cited evidence, which was adduced at trial, the State presented the testimony of Julia Vigo, who was Beall's girlfriend at the time of the offenses. She testified that, when she came home on May 26, 2018, she found Beall with money, and he told her he had robbed a bank at Meijer. Vigo further testified that she went to Vasquez's apartment on May 30, 2018, the morning of the LCNB robbery, in order to see Beall. She testified that she and Beall had sex and that he asked her if she "wanted him to kill them all." Vigo testified Beall was referring to Armstrong, Cole, and Vasquez and that he deemed them all to be "loose ends" who might talk. Afterward, Vigo returned to her own apartment.

{¶ 15} Vigo testified that she and Beall engaged in a video telephone call around 11:00 a.m. that same morning during which Beall told her that he, Cole, and Armstrong were going to rob a bank. Beall was in a vehicle, and Vigo could hear Cole and Armstrong talking. Around 4:00 p.m., Vigo texted Beall to check on him. He texted her back and indicated that he and Armstrong had made Cole rob a bank.

{¶ 16} Vigo and Beall had another video call, at which time Beall was in Vasquez's bedroom. Beall asked Vigo if she wanted to "see someone die today." Vigo testified that Beall then hung up. Vigo went over to Vasquez's apartment, where she learned Armstrong had been shot.

{¶ 17} Vigo testified that she returned to her apartment and found a note from Beall in which he claimed his life was over. Vigo testified that the correspondence from Beall contained statements saying that he had "two angles on the murder" and that he would either claim self-defense or blame it on Cole. Vigo also testified that other correspondence from Beall stated, "I haven't seen the evidence and I already confessed, but I can say I was lying because I was in love with Casey [Cole], trying to protect her and get my confession thrown out." Another letter from Beall stated:

Tell Alex I'm putting it on Casey. When my trial comes take a vacation, get a cheap hotel for a few days and don't show up to trial. [Alex] won't be breaking any laws and won't be in any trouble whatsoever. * * * Google it if you don't believe me. His testimony * * * will kill me literally. If either of you even care I'll tell you more later * * *if we're still talking. I do need your help on this. I have a plan, a half-baked one, but a plan nonetheless."

{¶ 18} Finally, Vigo testified that Beall sent her a letter with advice on robbing banks.

5

{¶ 19} Beall testified on his own behalf. He admitted to aiming a gun at Hanson and taking her car, but he stated that the gun was a BB gun. He also admitted he was with Cole and Armstrong during the LCNB robbery and received $400 as his share to the stolen money. Beall testified that the group stopped and bought heroin for Armstrong and that he also bought a gun for Armstrong. They smoked marijuana and then went to Vasquez's apartment. Beall claimed Armstrong was acting strange and that Armstrong and Cole were whispering to each other. Beall claimed Armstrong reached for his new gun, which he had in the back of his waistband, at which time Beall shot him. Beall admitted pointing his own gun at Vasquez but denied trying to pull the trigger.

*State v. Beall*, 2021-Ohio-1326, ¶¶ 2-20, <u>motion for delayed appeal granted,</u> 2021-Ohio-2615, ¶¶ 2-19, 163 Ohio St. 3d 1515, 171 N.E.3d 338, and <u>appeal not allowed,</u> 2021-Ohio-3336, ¶¶ 2-20, 164 Ohio St. 3d 1447, 173 N.E.3d 1238. (internal citations omitted).

On March 18, 2019, the trial court found Petitioner guilty on the four counts tried to the bench (One, Two, Twelve, Thirteen) and the jury found Petitioner guilty on all remaining counts. (Doc. 6-1 at PageID #2592-2697). On March 19, 2019, the trial court sentenced Petitioner to an aggregate fifty-six and a half years to life. (*Id.* at PageID #2617).

## II.    PROCEDURAL HISTORY

On March 20, 2019, Petitioner filed a notice of appeal to the Court of Appeals. (Doc. 5 at PageID #101-107). Petitioner raised four assignments of error:

(1) There was insufficient evidence to support a guilty verdict on the robbery and attempted murder charges. (*Id.* at PageID #120-124, 144-147).

(2) The trial court erred when it denied Petitioner's motion for misjoinder or to sever counts. (*Id.* at PageID #124-126).

(3) The trial court erred when it allowed the government to present "other crimes" evidence under evidence rule 404(b). (*Id.* at PageID #126-129).

(4) The trial court deprived Petitioner of his right to due process by making a statement that caused a witness not to testify. (*Id.* at PageID #147-149).

On April 16, 2021, the Court of Appeals issued a decision affirming the convictions and sentence. (*Id.* at PageID #175-201). On June 10, 2021, Petitioner filed a motion for leave to file a delayed notice of appeal with the Supreme Court of Ohio (*Id.* at PageID #204-232), which was granted. (*Id.* at PageID #234). Petitioner submitted a memorandum arguing for jurisdiction (*Id.* at PageID #235-280), which the Supreme Court of Ohio declined on September 28, 2021. (*Id.* at PageID #282).

### III.     POST-CONVICTION PROCEEDINGS

On February 18, 2020, Petitioner filed a *pro se* petition for post-conviction relief with the Montgomery County Court of Common Pleas. (*Id.* at PageID #283-291). Petitioner alleged, *inter alia*, that the prosecution engaged in misconduct by intimidating defense witness, Casey Cole, causing her to assert her Fifth Amendment right to remain silent. (*Id.* at PageID #286). On September 17, 2021, the Montgomery Court of Common Pleas issued an opinion denying Petitioner's claims without a hearing. (*Id.* at PageID #302-316). Petitioner filed a notice of appeal to the Court of Appeals (*id.* at PageID #317-332), which issued an opinion on April 15, 2022, affirming the dismissal of his petition. (*Id.* at PageID #360-369). Petitioner sought an appeal to the Ohio Supreme Court (*id.* at PageID #378-400), which declined jurisdiction on July 5, 2022. (*Id.* at PageID #402).

### IV.     HABEAS PROCEEDINGS

On August 3, 2022, Petitioner, proceeding *pro se*, filed the instant federal habeas petition, raising the following four grounds for relief:

**GROUND ONE**: 5th and 14th Amendment rights violated with conviction of attempted robbery and attempted murder without sufficient evidence.

**GROUND TWO**: 5th and 14th Amendment rights to a fair trial were violated when motion to sever charges within the indictment was denied.

**GROUND THREE:** 5th Amendment right was violated when state was permitted to use other acts evidence under Evid. R. 404(B).

**GROUND FOUR:** 5th and 14th Amendment rights were violated when the state intimidated a defense witness into not testifying.

(Doc. 1 at PageID #5-10).

On December 2, 2022, Respondent filed a Return of Writ. (Doc. 7). Respondent contends that Petitioner's Grounds Two and Three are procedurally defaulted because they were not presented as federal claims on direct appeal. (*Id.* at PageID #2633-2637). Respondent also contends that all four grounds for relief lack merit. (*Id.* at PageID #2637-2665).

## V.    STANDARDS OF REVIEW

### A. AEDPA

Because this is a habeas corpus case, provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. 104-132, 110 Stat. 1214, apply. *See Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The AEDPA limits the circumstances under which a federal court may grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in a state court proceeding.

Specifically, under AEDPA, a federal court shall not grant a writ unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Section 2254(d)(1) circumscribes a federal court's review of claimed legal errors, while § 2254(d)(2) places restrictions on a federal court's review of claimed factual errors. This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015). Additionally, this Court's habeas

review is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170 (2011).

### B. Procedural Default

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Over time, the term "procedural default" has come to describe a situation where a person convicted of a crime in a state court fails (for whatever reason) to properly present a particular claim to the highest court of the state so that the state has a fair chance to correct any errors made in the course of the trial or the appeal, before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552-53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court. As the

Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case – that is, they are "procedurally defaulted." It is well settled that "[a] common example of a procedural default is a failure to raise a claim in state court in a timely manner." *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021).

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit apply a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also McNeill v. Bagley*, 10 F.4th 588, 595 (6th Cir. 2021) (citing the four-part *Maupin* standard). First, the court must determine whether a state procedural rule is applicable to the petitioner's claim and whether the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. Finally, if the court determines that a state procedural rule was not complied with and that rule has an adequate and independent state ground, then the petitioner may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138. In order to establish cause, a petitioner must show that "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The petitioner bears the burden of showing cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001).

## VI.    DISCUSSION OF PROCEDURAL DEFAULT

Respondent contends that Grounds Two and Three are procedurally defaulted because Petitioner presented these assignments of error on direct appeal as a purely state law issue. Despite the opportunity (Doc. 3), Petitioner did not file a reply to the Respondent's procedural arguments.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim, a petitioner must assert both the *legal* and factual basis of his or her claim. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006); *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017).

The record reflects that Petitioner did not fairly present Ground Two or Ground Three as a constitutional claim to the Ohio state courts. Instead, Petitioner argued in his appellate brief that his indictments should not have been joined for trial and the "other crimes" evidence should not have been admitted based solely on the language and interpretation of Ohio statutes and jurisprudence. (Doc. 5 at PageID #124-126). Further, for the corresponding assignments of error to Grounds Two and Three, Petitioner's appellate brief includes no argument that his constitutional rights were violated.

The undersigned therefore concludes that Petitioner procedurally defaulted Grounds Two and Three by failing to fairly present a federal claim to the Court of Appeals. Moreover, as discussed below, even if Grounds Two and Three were not procedurally defaulted they lack merit.

## VII. DISCUSSION OF THE MERITS

### A. Ground One

In Ground One, Petitioner contends that his convictions for aiding and abetting the bank robbery committed by Casey Cole and for the attempted murder of Alexander Vasquez are not supported by sufficient evidence. Petitioner asserted Ground One as his first assignment of error on direct appeal. The Court of Appeals concluded that there was sufficient evidence presented at trial to establish each of the elements of aiding and abetting robbery and attempted murder. (Doc. 5 at PageID #183-189).

The well-settled standard of review for evaluating the merits of constitutional claims challenging the sufficiency of the evidence was established by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). The Supreme Court held in *Jackson* that because the Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, "the relevant question" in assessing the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

Under the *Jackson* standard, the State is not required to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of

12

the prosecution and must defer to that resolution." *Id.*; *see also Walker v. Engle*, 703 F.2d 959, 969–70 (6th Cir. 1983). It is the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson*, 443 U.S. at 319. Consequently, the reviewing court is not permitted to reweigh the evidence, reevaluate the credibility of witnesses, make its own subjective determination of guilt or innocence, or otherwise substitute its opinion for that of the jury. *See id.* at 318–19 & n.13; *see also United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009).

Moreover, federal habeas review of a claim challenging the sufficiency of the evidence is even further limited. As the Sixth Circuit explained in *Brown*, the federal habeas court is "bound by two layers of deference to groups who might view facts differently than [the habeas court] would." 567 F.3d at 205. The federal habeas court must defer not only to the trier of fact's findings as required by *Jackson*, but under 28 U.S.C. § 2254(d), must also "defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphasis in original); *see also Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011). As the Sixth Circuit explained in *Brown*:

> [W]e cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt. We cannot even inquire whether ***any*** rational trier of fact would conclude that petitioner...is guilty of the offenses for which he was charged. Instead, we must determine whether the Ohio Court of Appeals itself was unreasonable in ***its*** conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial.

567 F.3d at 205 (emphasis in original).

Applying this double-layer deferential standard to the case-at-hand, the undersigned concludes that the Court of Appeals' sufficiency determination for each charge is neither contrary to nor an unreasonable application of the *Jackson* standard.

Petitioner was charged in Count Four of the indictment with aiding and abetting robbery in violation of R.C. 2911.02(A)(3) and 2923.03(A)(2). Petitioner argues that no evidence was presented at trial that he was involved in the May 30, 2018, robbery of the LCNB bank committed by Casey Cole. (Doc. 1 at 5)

On direct appeal, Petitioner argued that the "force" element of the three robbery charges was not proven at trial. The Court of Appeals concluded that the notes used at each of the three bank robberies was sufficient to establish that the tellers were in fear of the immediate use of force as defined in R.C. 2911.02, which provides: "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall…[u]se or threaten the immediate use of force against another." R.C. 2911.05(A)(3). "'Force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). *State v. Beall*, 2021-Ohio-1326, ¶ 32-36, *motion for delayed appeal granted,* 2021-Ohio-2615, ¶ 32-36, 163 Ohio St. 3d 1515, 171 N.E.3d 338, and *appeal not allowed,* 2021-Ohio-3336, ¶ 32-36, 164 Ohio St. 3d 1447, 173 N.E.3d 1238.

The record reflects that a note was used in the May 30, 2018, robbery of the LCNB bank. Particularly, the teller at the LCNB bank, Jackie Ginn, testified that a woman entered the bank and handed her a note that read, "This is a robbery, give me all your 100s, 50s, 20s, 10s, no dye packs." (Doc. 5-1 at PageID #1295). Ginn opened the drawer and put money in a bag. (*Id.* at PageID #1296). Ginn testified that she was concerned about what would happen if she did not comply with the note. (*Id.* at PageID #1298).

Petitioner argues in his federal habeas petition that there was no evidence to support his conviction for aiding and abetting the robbery of the LCNB. This issue was not raised by Petitioner on direct appeal. During his trial testimony, Petitioner denied that he was involved in the robbery,

claiming that it was Armstrong who instructed Casey Cole to rob the LCNB. (Doc. 6-1 at PageID #2367-2370, 2411). However, Petitioner admitted that he waited in the vehicle during the robbery and received $400 of the proceeds. (*Id.* at PageID #2395). He also admitted that he told law enforcement that "we" made Casey Cole rob the LCNB. (*Id.* at PageID #2411).

Petitioner was charged in Count Nine with attempted murder in violation of 2902.03(A). He contends that the only evidence to support the attempted murder conviction was Vasquez's testimony, which was inconsistent with Vasquez's police interviews. (Doc. 1 at PageID #5.)

The Court of Appeals concluded that Vazquez's trial testimony established the elements of attempted murder. "Intent to kill 'may be presumed where the natural and probable consequence of a wrongful act is to produce death" and "may be deduced from all the surrounding circumstances, including the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of inflicting a fatal wound. The specific intent to kill may be reasonably inferred from the fact that a firearm is an inherently dangerous instrument, the use of which is likely to produce death.'" *State v. Beall*, 2021-Ohio-1326, ¶ 27, *motion for delayed appeal granted,* 2021-Ohio-2615, ¶ 27, 163 Ohio St. 3d 1515, 171 N.E.3d 338, and *appeal not allowed,* 2021-Ohio-3336, ¶ 27, 164 Ohio St. 3d 1447, 173 N.E.3d 1238 (internal citations omitted).

Alexander Vasquez testified at trial that he heard gunshots from his bedroom. (Doc. 6-1 at PageID #1539-1541). Shortly afterwards, Petitioner exited the bedroom and pointed a gun at him. (*Id.* at PageID #1541). Vasquez testified that he said, "please don't shoot," and Petitioner tried to pull the trigger more than once, but the gun did not fire. (*Id.*). Vasquez testified that after the gun failed to fire, Petitioner and Cole exited the apartment and he found Armstrong's body on the floor of the bedroom. (*Id.* at PageID #1542-1543). Vasquez acknowledged on cross-examination that he

may not have told law enforcement that Petitioner tried to pull the trigger, explaining that he was "in shock." (*Id.* at PageID #1614-1620).

During his testimony, Petitioner told a different version of his encounter with Alexander Vasquez. (Doc. 6-1 at PageID #2388-2390). Petitioner testified that he exited the bedroom and decided to point the gun at Vasquez because he was scared. (*Id.* at PageID #2388). Petitioner agreed that Vasquez put his hands in the air and said, "please don't shoot," but he denied that he ever pulled the trigger. (*Id.* at PageID #2390).

As noted above, the Court is not permitted to reweigh the evidence, reevaluate the credibility of witnesses, make its own subjective determination of guilt or innocence, or otherwise substitute its opinion for that of the jury. Even if Petitioner can point out inconsistencies between his testimony and the jury's verdict, the Court is bound to defer to both the jury's resolution of the factual issues *and* the state appellate court's decision that the evidence was sufficient to support the conviction. *Jackson*, 443 U.S. at 319; *Brown,* 567 F.3d at 205.

The undersigned concludes that the Court of Appeals' conclusion that sufficient evidence was presented at trial to establish each element of aiding and abetting robbery and attempted murder was neither contrary to nor an unreasonable application of federal law. Accordingly, Petitioner's sufficiency of the evidence claim is without merit.

### B. Ground Two

In Ground Two, Petitioner contends that he was denied due process of law because the trial court denied his motion to sever the robbery charges from the murder charges for trial. As mentioned above, Petitioner asserted Ground Two as his second assignment of error on direct appeal. The Court of Appeals concluded that even if the denial of the motion to sever was error, Petitioner was not prejudiced because the bank robbery counts were tried to the bench, which had

the same practical effect as severing the charges. *State v. Beall,* 2021-Ohio-1326, ¶ 42, *motion for delayed appeal granted,* 2021-Ohio-2615, ¶ 42, 163 Ohio St. 3d 1515, 171 N.E.3d 338, and *appeal not allowed,* 2021-Ohio-3336, ¶ 42, 164 Ohio St. 3d 1447, 173 N.E.3d 1238.

"Improper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his ... right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n.8, 106 S. Ct. 725, 88 L. Ed. 2d 814 (1986). A petitioner must show "*actual* prejudice, not merely the *potential* for prejudice." *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007) (emphasis in original). The Supreme Court has acknowledged the possibility of a due process violation from improper joinder only in dicta. The rule of due process at issue here is "one of the most general in all of criminal law," *Bass v. Burt*, 850 F. App'x 962, 965 (6th Cir. 2021), and "where the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims[.]" *Id.* (quoting *Woods*, 575 U.S. at 318) (internal quotation marks omitted)).

This Court is required to defer to the Court of Appeals' conclusion that Petitioner was not prejudiced by the denial of his motion to sever because the robbery counts were tried by the bench. Therefore, habeas relief on Ground Two is unavailable even if it were not procedurally defaulted.

### C. **Ground Three**

In Ground Three, Petitioner contends that his Fifth Amendment rights were violated because the trial court improperly admitted "other acts" evidence pursuant to Evidence Rule 404(b). (Doc. 1 at PageID #8). Specifically, Petitioner contends that the jury should not have heard evidence from the U.S. Bank robberies adjudicated in the bench trial, evidence from the prior bank robberies committed by Armstrong, or the letter he wrote to Vigo describing how to rob a bank.

(*Id.*) As discussed above, Petitioner unsuccessfully raised Ground Three on direct appeal, arguing that the trial court violated Ohio statutes and case law. (Doc. 5 at 126-129, 191-194).

On February 28, 2019, four days before the start of trial, the state filed a notice of intent to use "other acts" evidence at trial pursuant to Evidence Rule 404(b). (*Id.* at PageID #74-76). Petitioner's counsel filed an opposition, arguing that reasonable notice was not provided, and that the evidence amounted to impermissible character evidence. (*Id.* at PageID #77-83). The trial court overruled the Petitioner's objection, which his counsel renewed at the outset of trial. (Doc. 6-1 at PageID #1198-1199).

At trial, the jury heard testimony about the robberies at the U.S. Bank in Fairborn on May 26, 2018, and May 29, 2018, from Stephanie Burkhardt (Doc. 6-1 at PageID #1214-1245), Brandon Morgan (*Id.* at PageID #1246-1265), Eric Vogler (*Id*. at PageID #1266-1265), and David Holley (*Id.* at PageID #1887-1914). The trial court advised the jury to consider the U.S. Bank evidence "only for the purpose of deciding whether it proves the defendant's motive for some of the indicted charges and the defendant's plan or scheme relating to the indicated charges." (*Id.* at PageID #1916).

The jury also heard testimony from FBI Agent Dennis Eng about three bank robberies that Armstrong committed in Milford, Troy, and Franklin, Ohio. Eng testified that Petitioner gave a statement in which he identified Armstrong as the perpetrator of these robberies from surveillance video, and admitted that he drove Armstrong to each bank. (*Id.* at PageID #2302-2303). After Agent Eng testified, the trial court again advised the jury not to consider the evidence for an improper purpose. (*Id.* at PageID #2306-2307).

When Julia Vigo testified, she identified a letter that she received from Petitioner while he was in jail. (*Id.* at PageID #2139-2140). Vigo read the content of the note for the jury:

> I advise to do a store like Meijer some of those other places can lock the doors of the vestibule. Be safe, be smart…Don't leave the note, don't even let out your fingers. No weapons or threats are necessary. Tell them what not to give you as well as what to give you…. All my notes said this, this is a robbery give me all the money starting with the 100s, 50s and 20s, no dye packs, no tracking devices.

(*Id.* at PageID #2138-2140).

 "[E]rrors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding." *Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir.1988). Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff,* 518 U.S. 37, 43, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (quoting *Patterson v. New York,* 432 U.S. 197, 202, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)); *see also Spencer v. Texas,* 385 U.S. 554, 563–64, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).

The Appeals Court concluded that the "other acts" evidence admitted at trial was relevant and not unfairly prejudicial. (Doc. 5 at PageID #191-194). The Appeals Court explained that the U.S. Bank robberies were relevant because they were similar in nature to the LCNB robbery and demonstrated a "behavioral footprint." Armstrong's prior bank robberies were relevant to show that Petitioner had a motive to murder Armstrong. Finally, the jailhouse letter to Vigo was relevant because the similarity to the LCNB robbery indicated that Petitioner was involved. (*Id.*).

It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). Petitioner fails to show an error of constitutional dimension. Therefore, even if Ground Three were not procedurally defaulted, it would fail on the merits.

### D.  Ground Four

In Ground Four, Petitioner contends that the prosecutor engaged in misconduct. (Doc. 1 at PageID #10). Particularly, Petitioner contends that the prosecutor intimidated his witness, Casey Cole, into asserting her Fifth Amendment privilege and that Cole therefore refused to testify in his defense. (*Id.*). Petitioner raised a related but different claim on direct appeal, asserting that the *trial court* improperly advised Cole of her Fifth Amendment rights. (Doc. 5 at PageID #147-149). The Appeals Court dismissed the claim, finding that the trial court properly advised the witness of the possible consequences of her testimony. (*Id.* at PageID #194-198).

It was not until Petitioner filed his post-conviction petition that he asserted that the *prosecutor* engaged in misconduct by intimidating Cole into taking the Fifth Amendment at trial. (*Id.* at PageID #286). Petitioner's post-conviction petition included a purported affidavit from Cole, in which she stated that the prosecutor threatened to charge Cole with "complicity to murder" if she testified. (*Id.* at PageID #287). Cole purportedly further said that if she had testified, she would have said that Petitioner did not participate in the LCNB robbery and that Armstrong had pointed a gun at Petitioner before he was killed. (*Id.*).

The Court of Common Pleas of Montgomery County denied the claim, finding the affidavit to not be credible. (*Id.* at PageID #312-314). The Appeals Court agreed. (*Id.* at PageID #360-367). The Appeals Court determined that the affidavit was not entitled to the presumption of truth ordinarily afforded to sworn affidavits because it did not conform to the statutory form requirements. (*Id.* at PageID #366). The Appeals Court also found that the Court of Common Pleas did not abuse its discretion in concluding that the affidavit lacked credibility, pointing out that the statements in the affidavit were inconsistent with Petitioner's admissions to law enforcement. (*Id.* at PageID #366-367).

The state courts made a factual determination that the Cole affidavit lacks credibility. Absent clear and convincing evidence to the contrary, this Court is bound to defer to the conclusion that the Cole affidavit is not to be believed. *See* 28 U.S.C. § 2254(e)(1). Petitioner has failed to produce clear and convincing evidence that the state courts' factual determination was incorrect. Without the affidavit, Petitioner has no support for his contention that prosecutorial misconduct occurred. Ground Four is therefore with without merit and should be dismissed.

## VIII.   CONCLUSION

The undersigned concludes that Grounds Two and Three are procedurally defaulted and without merit, and Grounds One and Four are without merit. It is therefore **RECOMMENDED** that the habeas petition be **DENIED** and that this action be **DISMISSED WITH PREJUDICE.**

In sum, the undersigned **RECOMMENDS:**

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the petition because petitioner has not stated a "viable claim of the denial of a constitutional right" or presented an issue that is "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (*citing Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by a petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** any petitioner leave to appeal *in forma pauperis* upon a showing of

financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

**IT IS SO RECOMMENDED**.

October 2, 2024                                        */s/ Caroline H. Gentry*
                                                       CAROLINE H. GENTRY
                                                       United States Magistrate Judge

<u>**PROCEDURE ON OBJECTIONS**</u>

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.